## CONKLIN et al. v. UNITED STATES SHIPBUILDING CO.

(Circuit Court, D. New Jersey. January 17, 1906.)

1. CORPORATIONS—INSOLVENCY—PROCEDURE UNDER NEW JERSEY STATUTE.

Corporation Act N. J. §§ 75-78 (Laws 1896, pp. 301, 302, c. 185), provides for the proving and allowance by the receiver of claims against an insolvent corporation and that an appeal may be taken from his decision to the court of chancery, by either the corporation or a claimant. Section 85 (page 304) provides that before distribution of the assets the court shall allow a reasonable compensation to the receiver for his services, and the costs and expenses of the administration of his trust. *Held*, that a claim for services rendered to a receiver, under a contract with him, was not one against the corporation which could be adjudicated by the receiver, but a part of the costs of administration to be adjusted under section 85.

2. SAME—CLAIMS AGAINST INSOLVENT CORPORATION—SALARIES OF OFFICERS.

Under the New Jersey corporation act (Laws 1896, p. 277, c. 185), which fixes the term of the president of a corporation at one year, the president of a corporation, on an adjudication of its insolvency and the appointment of a receiver, can have no legal claim against it for salary, beyond the current year for which he was elected, based on an alleged agreement that he should be employed for a further term.

3. SAME—CREDITORS.

A maker of notes claimed to have been assumed by a corporation, but which are owned by a third party and unpaid, is not a creditor of the corporation, nor entitled to prove a claim against it in insolvency, the owner of the notes being the only person who could make such claim.

In Equity. On appeal from decisions of receiver.
See 123 Fed. 913; 124 Fed. 1020.

William H. Jackson, for appellant Nixon.
Sherrerd Depue (Lindabury, Depue & Faulks, on the brief), for receiver.

LANNING, District Judge. James Smith, Jr., was appointed receiver of the United States Shipbuilding Company by this court on June 30, 1903. On April 15, 1904, and within the time limited by the court for the presentation of the claims of creditors to the receiver, Lewis Nixon presented to the receiver a claim against the United States Shipbuilding Company containing two items as follows:

To salary as president of said company from July 1, 1903, to April 1, 1904, at $30,000 per annum .................................. $ 22,500
To salary as president from April 1, 1904, to August 1, 1907, at $30,000 per annum .......................................... 100,000

$122,500

His affidavit accompanying the said claim contains the following statement:

"That heretofore, and on or about the 1st day of August, A. D. 1902, the United States Shipbuilding Company entered into a contract with deponent

whereby deponent was to devote his entire time and attention to the affairs of the United States Shipbuilding Company, as president thereof, for a period of five years, in consideration of the annual sum of $30,000, payable in monthly installments of $2500 each; that in pursuance of said contract deponent, on said August 1, 1902, entered upon the discharge of his duties as such president, and said company complied with its part of the agreement upon its part to be performed by paying deponent the monthly sum of $2500 up to and including the month of June, 1903; that notwithstanding the fact that since the 1st day of July A. D. 1903, deponent has at all times held himself ready and willing to comply with his duties as president of the United States Shipbuilding Company, by reason whereof he has been prevented from engaging in any other occupation, nevertheless, the said United States Shipbuilding Company has not, nor has any one else in its behalf, paid to deponent the monthly sums of money due him under said contract as aforesaid; that, by reason of said contract, there became due to deponent on the 1st day of April, 1904, the sum of $22,500, as set forth in the statement hereto annexed. Deponent further says that on the 1st day of August, 1907, said United States Shipbuilding Company will be further indebted to him in the sum of $100,000, for salary due him, under the contract above referred to, for the period from April, 1, 1904, to August 1, 1907, the date on which the said contract of employment expires."

The receiver disallowed the claim, and Mr. Nixon has now appealed to this court from the receiver's decision. In his petition of appeal he states that he is a creditor of the receiver, James Smith, Jr., and of the defendant corporation, upon two separate claims, one of the claims being the above mentioned item of $22,500 and the other the item of $100,000. As to the item of $22,500 he alleges that it was for services actually rendered by him to the receiver for and on behalf of the United States Shipbuilding Company between July 1, 1903, and April 1, 1904, at the special instance and request of the receiver, and upon the understanding and agreement that he should be paid for those services at the rate theretofore paid him as president of the company; that such services were necessary and incident to the administration of the matters pertaining to the receivership and were operating expenses for the preservation of the trust fund, and that they were reasonably worth $2,500 per month, or $22,500 in all. He prays that the item of $22,500 may be allowed as an expense incident to the administration of the receiver.

The appeal is made under the provisions of section 78 of the corporations act of the state of New Jersey. Laws 1896, p. 302, c. 185. Before quoting that section it should be observed that section 75 (page 301) gives to the court of chancery of New Jersey the power to limit the time within which creditors shall present or make proof to the receiver of their respective claims against the corporation, and to bar all creditors and claimants failing to present or prove their claims within the time limited, from participating in the distribution of the assets of the corporation. Section 76 is as follows:

"Every claim against an insolvent corporation shall be presented to the receiver in writing and upon oath; and the claimant, if required, shall submit himself to such examination in relation to the claim as the receiver shall direct, and shall produce such books and papers relating to the claim as shall be required; and the receiver shall have power to examine, under oath or affirmation, all witnesses produced before him touching the claims, and shall pass upon and allow or disallow the claims, or any part thereof, and notify the claimants of his determination."

Section 77 gives to any creditor or claimant who shall lay his claim before the receiver, or to the receiver himself the right to demand a trial by jury. Then section 78 is as follows:

"Every such insolvent corporation, or any person aggrieved by the proceedings or determination of such receiver in the discharge of his duty, may appeal to the court of chancery, which court shall, in a summary way, hear and determine the matter complained of, and make such order touching the same as shall be equitable and just."

Assuming that the provisions of the statute above quoted are applicable to a receivership in this court, it is clear that section 78 provides for an appeal from the determination of a receiver, only upon such a claim as he is authorized to adjudicate under the provisions of section 76. That section authorizes him to adjudicate claims against the insolvent corporation, and not claims for services rendered to the receiver in the administration of his trust. For this latter class of claims section 85 (page 304) makes provision. That section is as follows:

"Before distribution of the assets of an insolvent corporation among the creditors or stockholders the court of chancery shall allow a reasonable compensation to the receiver for his services and the costs and expenses of the administration of his trust, and the costs of the proceedings in said court, to be first paid out of said assets."

It follows that the claim of the petitioner set forth in his petition of appeal for $22,500 cannot be adjudicated in this proceeding. If the receiver did in fact make a contract with the petitioner for the petitioner's services, a claim based on that contract cannot be adjudicated by the receiver. The law furnishes ample remedies to such a creditor for the enforcement of all his legal rights, without calling upon the receiver to sit as a judge in his own case.

The second item of the claim is thus explained in the petition of appeal:

"Your petitioner alleges that the second claim, viz., for $100,000, submitted to said receiver, is for salary as president of said company from April 1, 1904, to August 1, 1907, at $30,000 per annum, pursuant to the contract entered into by and between your petitioner and said corporation, United States Shipbuilding Company, for five years of service by said petitioner as president of said corporation, at the rate of $30,000 per annum. Your petitioner says that the contract for five years' service, as president of said company, was made and entered into in the following manner, namely: On June 24, 1902, a written offer to sell certain properties to the said United States Shipbuilding Company was made by the promoter of said United States Shipbuilding Company, and in said written offer was included the property of the Crescent Shipyard Company. Said written offer of June 24, 1902, to sell, to the United States Shipbuilding Company, the property of the Crescent Shipyard Company, was subject to the following condition, viz.: 'It is a part of this offer that Mr. Lewis Nixon contract with your company to give to its business his time and attention for a period of five years at a salary to be agreed upon, and shall also enter into the usual contract with your company not to compete directly or indirectly with it in its business.' Thereafter, on said 24th day of June, 1902, the said United States Shipbuilding Company by a resolution of the board of directors duly accepted the offer to purchase the property of the Crescent Shipyard Company, and in said resolution agreed to employ said Lewis Nixon, as president of said company for a period of five years as stated in said offer as aforesaid. The said acceptance was contained

in the following resolution on the part of the directors, namely: 'Resolved that said offer be and the same hereby is accepted, and that the proper officers of this company be, and they are, hereby, authorized to do and perform any and all necessary acts and things, and to make, execute, acknowledge, deliver, and accept, all necessary contracts and instruments in writing, in such form as they may be advised, for the carrying out and consummation of said offer and its acceptance, and that the secretary of this company be, and he is, hereby authorized to affix to said instruments, or any of them, the corporate seal of this company and duly attest the same, and acknowledge the execution of such instrument.' Thereafter, and on September 10, 1902, the board of directors of said United States Shipbuilding Company, recognizing its obligation to employ said Lewis Nixon as president for a term of five years, proceeded to elect said Lewis Nixon as president of said company for the ensuing year, as appears from the following extract from the minutes of the board of directors of the said United States Shipbuilding Company held September 10, 1902: 'The board proceeded to the election of a president in the place of Mr. Newman, resigned. Ballot having been taken, it was found that Mr. Lewis Nixon had received the votes of all the directors present and was thereupon declared elected president of the company in place of Mr. Newman for the ensuing year.' Thereafter, and on October 29, 1902, the executive committee of the said United States Shipbuilding Company recognizing the obligation of the said company to employ said Lewis Nixon as president of said company for a period of five years, proceeded by resolution to fix the salary of said Lewis Nixon, as president of the said United States Shipbuilding Company, at $30,000 per annum, to be paid in equal monthly installments. Said resolution of October 29, 1902, is as follows: 'On motion made and duly seconded, resolved that the salary of Mr. Lewis Nixon as president of the United States Shipbuilding Company be, and hereby is, fixed at $30,000 per annum, to be paid in equal monthly installments beginning on the first day of September, 1902.' "

The office of a petition of appeal is to secure a review of a receiver's determination concerning a claim as it was presented to him. The petition here asks for no such review. In the affidavit annexed to the claim, filed with the receiver April 15, 1904, the declaration is that the United States Shipbuilding Company entered into a contract with Mr. Nixon, on or about August 1, 1902, whereby he was to devote his entire time and attention to the affairs of the company "as president thereof for a period of five years, in consideration of the annual sum of $30,000," and that on August 1, 1902, he "entered upon the discharge of his duties as such president." In his petition of appeal filed in this court a year later, he declared that the United States Shipbuilding Company, by its resolution of June 24, 1902, accepting the offer of that date, "agreed to employ said Lewis Nixon as president of said company for a period of five years." There is a fatal variance between these two papers. The contract set forth in the petition of appeal is not the contract mentioned in the affidavit. Furthermore, neither the resolution nor the offer of June 24, 1902, set forth in the petition of appeal, in anywise refers to the presidency of the company. According to the petition, the salary of the president was not fixed until October 29, 1902, nearly three months after the date of the contract mentioned in the affidavit, and after, in that instrument, Mr. Nixon declared he entered upon the discharge of his duties as president. The allegations of the petition show, it seems to me, that Mr. Nixon simply accepted the office of president to which he was elected, with the salary attached to that office. Under the law his term as president was for one year only. Without deciding

whether a salary attached to the office of president of a corporation ceases on the adjudication of that corporation's insolvency, the appointment of a receiver, and an injunction restraining the corporation and its officers from doing any business for the corporation, or exercising any of its franchises, it is clear that the president of such corporation can have no legal claim for salary beyond the end of the presidential year running at the time of the appointment of the receiver. When the presidential year current on June 30, 1903, the date of the receiver's appointment, ended, does not appear, nor is the claim for $22,500 for the 9 months from June 30, 1903, to April 1, 1904, for services rendered to the receiver on a contract made with him, consistent with a claim for salary as president for that period. After careful attention, I am not able to find any ground upon which either of the petitioner's claims can be supported.

The petitioner also presents a second petition of appeal from a decision of the receiver disallowing a claim upon three promissory notes. In it he alleges that he presented to the receiver in due form the following claim:

"To James Smith, Jr., receiver of the United States Shipbuilding Company: Please take notice that I do claim that there is due to me from said company the amounts hereinafter set forth, according to the terms of a certain contract made and entered into by the Crescent Shipyard Company with me, at the time that I sold said Shipyard Company my shipbuilding plant at Elizabethport, and whereby said Crescent Shipyard Company assumed and agreed to pay all existing debts contracted by me in the shipbuilding business at Elizabethport aforesaid, said contract having been retained by said company, and the terms of which have been entered in its official minutes. The following is a list of the debts due and unpaid at the time of the transfer of the said shipbuilding business to said company, contracted and incurred in the shipbuilding business, and covered by said contract, which still remain due and unpaid, namely: three promissory notes payable on demand, discounted by the National State Bank of the city of Elizabeth and held by it at this time, no part of the principal thereof having been paid: (1) Dated January 17, 1898, $4,000. (2) Dated February 10, 1898, $5,000. (3) Dated December 13, 1898, $10,000—with interest on all of the above notes from October 1, 1903, which notes were signed by me, and upon which, said bank claims I am primarily liable."

It will be observed that the notes are not held by the petitioner, but by the National State Bank of the City of Elizabeth. The petition fails to show that the petitioner is a creditor of the United States Shipbuilding Company. The petition, in express terms, is founded on section 78 of the New Jersey corporations act. That section, as already pointed out, gives an appeal from the determination of a receiver concerning the claim of a creditor of the corporation. Assuming that the United States Shipbuilding Company is liable for the payment of the notes, the claim should be presented by the owner of the notes, which is the National State Bank of the City of Elizabeth, and not Mr. Nixon. If Mr. Nixon shall pay the notes before the assets of the insolvent company are fully distributed, he may then possibly be allowed to present his claim under the authorities in Conklin v. United States Shipbuilding Company (C. C.) 136 Fed. 1006, and the cases there cited.

Both petitions of appeal must be dismissed.